UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY BYBERG,                                    Case No. 12-10158

         Plaintiff,                              Lawrence P. Zatkoff
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Michael Hluchaniuk
                                                  United States Magistrate Judge
         Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 11)

## I.  PROCEDURAL HISTORY

    A.  <u>Proceedings in this Court</u>

On January 13, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Lawrence P. Zatkoff referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for a period of disability and social security disability income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 8, 11).

    B.  <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on February 25, 2010, alleging that she

became unable to work on June 4, 2009.  (Dkt. 5-2, Pg ID 31).  The claim was

initially disapproved by the Commissioner on July 21, 2010.  (Dkt. 5-2, Pg ID 31).

Plaintiff requested a hearing and on May 3, 2011, plaintiff appeared with counsel

before Administrative Law Judge (ALJ) Richard L. Sasena, who considered the

case *de novo*.  In a decision dated August 23, 2011, the ALJ found that plaintiff

was not disabled.  (Dkt. 5-2, Pg ID 31-41).  Plaintiff requested a review of this

decision on September 8, 2011.  (Dkt. 5-2, Pg ID 27).  The ALJ's decision became

the final decision of the Commissioner when, after the review of additional

exhibits,[1] the Appeals Council, on December 14, 2011, denied plaintiff's request

for review.  (Dkt. 5-2, Pg ID 19-21); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a
request to review the ALJ's decision, since it has been held that the record is closed at the
administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not
part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th
Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since
district court review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence presented to the
ALJ. In other words, Appeals Council evidence may not be considered for the purpose of
substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 40 years of age at the time of the most recent administrative hearing.  (Dkt. 5-6, Pg ID 200).  Plaintiff's has past relevant work history as a cleaner and an insurance sales agent.  (Dkt. 5-2, Pg ID 40).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since June 4, 2009, the alleged onset date.  (Dkt. 5-2, Pg ID 33).  At step two, the ALJ found that plaintiff's history of back disorder/pain, history of fibromyalgia, dysthymia, panic disorder, and generalized anxiety disorder were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 5-2, Pg ID 34).  At step four, the ALJ found plaintiff has the residual functional capacity to perform light work except that she requires a sit/stand option after 20 minutes; should only occasionally climb, balance, stoop, kneel, crouch, and crawl; requires simple, routine, repetitive tasks, defined as those that require little judgment and can be learned in a short period; jobs with no interaction with the public; and jobs with only occasional interaction with coworkers.  (Dkt. 5-2, Pg ID 35).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 9-2,

Pg ID 49).

B.     Plaintiff's Claims of Error

Plaintiff first argues that the ALJ erred by improperly analyzing her fibromyalgia condition.  Specifically, the ALJ rejected plaintiff's claim that her fibromyalgia was disabling because of a lack of objective medical evidence. According to plaintiff, this is precisely the requirement rejected by the Sixth Circuit in *Rogers v. Comm'r of Soc Sec*, 486 F3d 234, 243-244 (6th Cir. 2007).

Next, plaintiff argues that the ALJ improperly failed to give controlling weight to plaintiff's treating physician's opinions.  And, plaintiff contends that the ALJ also failed to analyze the factors under 20 C.F.R. § 404.1527(d)(2) when he declined to give the treating physician's opinion controlling weight. Instead, the ALJ rejected the treating physician's opinion based on a lack of objective medical evidence, which, plaintiff contends, is to be expected in a fibromyalgia case. Plaintiff also points out that the only medical opinions on this record with respect to plaintiff's physical condition came from Drs. Jackson and Kovan. The ALJ did not obtain any consultative examinations or opinions from a medical expert. Consequently, plaintiff argues that he could only have been relying on his own beliefs in rejecting those of the two treaters, thus "succumb[ing] to the temptation to play doctor and make their own independent medical findings" *Rohan v. Chater*, 98 F3d 966, 970 (7th Cir. 1996).

C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ correctly gave no weight to Dr. Jackson's and Dr. Kovan's opinions.  First, whether a person is disabled is an issue reserved to the Commissioner.  While Dr. Jackson and Dr. Kovan opined that plaintiff was disabled, a statement such as this "does not mean that [the Commissioner] will find [Plaintiff] disabled."  (Tr. 275, 371-72); 20 C.F.R. § 404.1527(e)(1); SSR 96-5p, 1996 WL 374183, at *2 (These opinions are "never entitled to controlling weight or special significance.").

Second, the Commissioner contends that Dr. Jackson and Dr. Kovan's medical opinions were inconsistent with their own treatment notes.  (Tr. 21)  An ALJ must give a treating medical source controlling weight only "if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), quoting 20 C.F.R. § 404.1527(d)(2).  The Commissioner argues that because fibromyalgia is difficult to detect with diagnostic techniques, credibility and consistency are key for an ALJ to make determinations about this condition's effects.  *Rogers*, 486 F.3d at 248; Walters, 127 F.3d at 532.  To show the inconsistency in Dr. Jackson and Dr. Kovan's medical opinions, the ALJ appropriately applied the regulatory factors including: 1) the type of examining

relationship; 2) the treatment relationship including i) the length and frequency of treatment and ii) the nature and extent of the treatment of the relationship; 3) the supportability of the opinion by evidence and explanation; 4) the consistency of the opinion with the record as whole; 5) the specialization, if any, of the doctor; and 6) other factors, including the Social Security Administration's understanding of particular disability. 20 C.F.R. § 404.1527(d).  The Commissioner points out that not every factor will apply in every case and certain factors may take precedent over other factors.  *See* Evaluating Medical Opinions, 56 Fed. Reg. 36,932, 36,935-36 (Aug. 1, 1991) (to be codified at 20 C.F.R. pt. 404).

While the ALJ noted that Dr. Jackson and Dr. Kovan were examining physicians who treated plaintiff on multiple occasions over a period of years, he also noted that there was no support in the medical record for the opinion that plaintiff was unable to work.  (Tr. 18-19).  All tests came back normal, with minimal abnormalities, and according to the Commissioner, plaintiff did not credibly report her symptoms.  (Tr. 18-19, 248, 223-225, 296-300).  The ALJ also noted that these doctors found plaintiff's impairments to be mild, that objective tests showed limited and/or no abnormalities, and that these doctors noted plaintiff's condition was improving.  (Tr. 17-21, 275, 294, 368-69, 371).  The ALJ pointed to the "routine and conservative treatment measures" such as Motrin and heating pads, noting that "[i]f the claimant's back/neck impairments were

disabling, more aggressive treatment over time would be expected."  (Tr. 19).

Lastly, the ALJ noted that both Dr. Jackson and Dr. Kovan were doctors of

osteopathic medicine, a general practice, not specialists in fibromyalgia, such as

rheumatologists.  (Tr. 18).  According to the Commissioner, given the

inconsistency between the opinions of Dr. Jackson and Dr. Kovan and their notes

and treatment measures, the ALJ reasonably gave their opinions no weight.  20

C.F.R. § 404.1527(e)(1); SSR 96-2p, 1996 WL 374188, at *1.

The Commissioner also urges the Court to reject plaintiff's argument that the

ALJ should have sought outside sources to make the RFC finding.  First, plaintiff,

who was represented by counsel at hearing, never asked for a consultative hearing

or medical expert.  The Commissioner contends that because plaintiff failed to

request a consultative examination for her physical impairments at the

administrative level, she has waived this issue.  *Harper v. Sec'y of Health & Hum.

Serv.*, 978 F.2d 260, 265 (6th Cir. 1992) ("Because the record does not indicate

that the issue was raised at the administrative level, we are not in a position to

consider the issue.").  In addition, the Commissioner maintains that the ALJ is not

required to seek outside sources.  The ALJ, if he chooses, may consult with

medical experts or send plaintiff to a consultant specialist, but is not required to do

so and the final decision regarding issues reserved to the commissioner, such

as the RFC finding, is to be determined by the commissioner, not by medical

source opinions.  20 C.F.R. 404.1527(d)(2); SSR 96-5p, 1996 WL 374183, at *6; *Collins v . Comm'r of Soc. Sec.*, 357 Fed. Appx. 663 (6th. Cir. 2009); *Landsaw v. Sec'y of Health & Hum. Serv*., 803 F.2d 211, 214 (6th Cir. 1986) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.").  The Commissioner contends that while the record was inconsistent with Dr. Jackson's and Dr. Kovan's opinions, there were no gaps in the record, as it showed plaintiff's complete medical history beginning at her onset date.  (Tr. 17-23).  And, plaintiff had the opportunity to add evidence to the record, did so, and that evidence did not change the decision.  (Tr. 1).  Therefore, the Commissioner argues that the record is complete and there was sufficient evidence for the ALJ to determine plaintiff's RFC, without outside resources.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial

Report and Recommendation
Cross-Motions for Summary Judgment
*Byberg v. Comm'r*; Case No. 12-10158

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

Report and Recommendation
Cross-Motions for Summary Judgment
*Byberg v. Comm'r*; Case No. 12-10158

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

Report and Recommendation
Cross-Motions for Summary Judgment
*Byberg v. Comm'r*; Case No. 12-10158

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

Report and Recommendation
Cross-Motions for Summary Judgment
*Byberg v. Comm'r*; Case No. 12-10158

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do

basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

     C.    <u>Analysis and Conclusions</u>

     1.    Single Decision-Maker

Plaintiff argues that the ALJ was required to obtain a medical opinion

because he chose to reject the treating physician opinions.  The Commissioner

argues that the ALJ is not required to obtain a medical expert in order to formulate

the RFC, because that is an issue reserved to the Commissioner.  In the view of the

undersigned, neither party has it exactly right.  In this case, the single-decision

maker (SDM) model was used pursuant to 20 C.F.R. §§ 404.906(b)(2).  This

regulation provides streamlined procedures as an experiment, in which State

Agency disability examiners may decide cases without documenting medical

opinions from State Agency medical consultants. The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011). This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. *Id.* Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. *Id.*, citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. In this case, there was a Physical Residual Functional Capacity Assessment completed by an SDM, Christina Kalmar. (Dkt. 5-3, Pg ID 72-79). Thus, no medical opinion was obtained at this level of review, in accordance with this model.

While the ALJ did not rely on the opinions of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand. As set forth in *Stratton v. Astrue*, — F.Supp.2d —; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Id.* at *12;

citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to

determine whether a claimant's ailments meet the Listings, expert assistance is

crucial to an ALJ's determination of whether a claimant's ailments are equivalent

to the Listings.") (citation and quotation marks omitted).  This expert opinion

requirement can be satisfied by a signature on the Disability Determination

Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3

(The expert-opinion evidence required by SSR 96-6p can take many forms,

including "[t]he signature of a State agency medical ... consultant on an SSA-831-

U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006

WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability

Determination and Transmittal Form signed by Iver C. Nielson, M.D ....

discharging the commissioner's basic duty to obtain medical-expert advice

concerning the Listings question.").  There is no Disability Determination and

Transmittal Form as to plaintiff's physical impairments in this record.

The great weight of authority[2] holds that a record lacking any medical

advisor opinion on equivalency requires a remand.  *Stratton*, at *13 (collecting

---

[2] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination
that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a
medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL
22466164, at *2 n. 3 (D. Me. 2003).

cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing"). While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive. In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. Nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)). Based on the foregoing, the undersigned

cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases. Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments. Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which does not otherwise appear to be modified by the SDM model. *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").

While the undersigned is not necessarily convinced that plaintiff can show that her physical impairments satisfy the equivalency requirements, particularly given her credibility issues and the lack of clinical support in her treating physician records (see below), "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012). For these reasons, the undersigned concludes that this matter

must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence.  Given these conclusions, plaintiff's credibility will necessarily require re-evaluation.

>        2.       Treating physician opinions/fibromyalgia

The Court of Appeals for the Sixth Circuit has recognized the difficulty that fibromyalgia presents for disability determination:

> In stark contrast to the unremitting pain of which
> [fibromyalgia] patients complain, physical examinations
> will usually yield normal results-a full range of motion,
> no joint swelling, as well as normal muscle strength and
> neurological reactions. There are no objective tests which
> can conclusively confirm the disease; rather it is a
> process of diagnosis by exclusion and testing of certain
> 'focal tender points' on the body for acute tenderness
> which is characteristic in [fibromyalgia] patients.

*Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988).

"*As it is difficult to pin down objective medical evidence to support a diagnosis of fibromyalgia*, it is even more difficult to produce objective medical evidence that shows the degree to which fibromyalgia limits the functioning of its victim." *Laxton v. Astrue*, 2010 WL 925791, *6 (E.D. Tenn. 2010) (emphasis added).  The Sixth Circuit and the Social Security Administration have also recognized that it makes little sense to rely on a lack of objective medical evidence when addressing both the diagnosis and the treatment of fibromyalgia.  *See e.g.*, *Rogers v. Comm'r*, 486 F.3d 234, 243-44 (6th Cir. 2007) ("[I]n light of the unique evidentiary

difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ..."); *Preston v. Sec'y of Health & Human Serv.*, 854 F.2d 815, 820 (6th Cir. 1988) (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity); 64 FR 32410, 32411 (June 17, 1999) ("Fibromyalgia is a 'nonarticular' rheumatic disease, and objective impairment of musculoskeletal function, including limitation of motion of the joints, is not present, in contrast to the usual findings in 'articular' rheumatic diseases.  Joint examinations in fibromyalgia are necessary only to exclude other rheumatic diseases because physical signs other than tender points at specific locations are lacking.  The pain of fibromyalgia is not joint pain, but a deep aching, or sometimes burning pain, primarily in muscles, but sometimes in fascia, ligaments, areas of tendon insertions, and other areas of connective tissue.  The evaluation criteria require that the pain be widespread, and that the symptoms be assessed based on whether they are constant or episodic, or require continuous medication, but they are not based on evaluations of individual joints or other specific parts of the musculoskeletal system.") (internal citations omitted).

Thus, the physician's clinical notes and observations will be critical in assessment the level of impairment caused by fibromyalgia.  Notably, "ALJ may not substitute his own medical judgment for that of the treating physician where

the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). In this case, however, the ALJ gave no weight to plaintiff's treating physician's for several valid reasons. Their records show very conservative routine treatment, including occasional injections, mild pain medication, and use of a TENS unit. While plaintiff was hesitant to undergo physical therapy because of the out-of-pocket cost, it is not clear on this record that such treatment was cost-prohibitive, given that she had health insurance through her husband and was receiving unemployment benefits up until at least the time of the hearing. In addition, plaintiff's treating physician records showed improvement in plaintiff's condition and that she was being weaned off pain medications. And, the ALJ was not required to give controlling weight to their opinions that plaintiff could "not work" because plaintiff's RFC is an issue ultimately reserved to the Commissioner.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

Report and Recommendation
Cross-Motions for Summary Judgment
*Byberg v. Comm'r*; Case No. 12-10158

for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

Report and Recommendation
Cross-Motions for Summary Judgment
*Byberg v. Comm'r*; Case No. 12-10158

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: March 11, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on March 11, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Norton J. Cohen, Laura A. Sagolla, AUSA, and the Commissioner of Social Security.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7850
                                        tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Byberg v. Comm'r*; Case No. 12-10158